**In re MATERIAL CORPORATION, INC. Debtor.**

**Bankruptcy No. 90 B 10097.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 20, 1996.

David A. Haimes, Trial Atty., Dept. of Justice, Northern Region, Tax Division, Civil Trial Section, Washington, DC, for Plaintiff.

Cary R. Rosenthal, Richard M. Colombik & Assoc., Schaumburg, IL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ERWIN I. KATZ, Judge.

This matter comes before the Court on the Debtor, Material Corporation, Inc.'s, Supplemental Objection To Claims Of The Internal Revenue Service, filed herein on March 29, 1993, and the Internal Revenue Service's Amended Proof Of Claim, filed herein on July 3, 1990. The Debtor's Supplemental Objection alleges the Internal Revenue Service ("IRS") committed numerous tortious acts and statutory violations against the Debtor. This is a core proceeding over which the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).

A trial was held on November 28, 1995, December 7, 1995 and December 8, 1995, where evidence was presented and arguments were heard. Post-trial briefs have been filed by both the Debtor and the United States. After considering the evidence and arguments presented, the Court enters these findings of fact and conclusions of law in accordance with Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

## I. PROCEDURAL BACKGROUND

The Debtor initiated the above-styled bankruptcy proceeding on June 1, 1990, by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On June 4, 1990, the Debtor filed a Verified Complaint, Adversary No. 90 A 0452, against the United States requesting the Court to order the United States to surrender various property levied upon and seized by the IRS.

On July 3, 1990, the Internal Revenue Service ("IRS") filed an Amended Proof of Claim for $145,620.61 for Form 941 and 940 payroll taxes for the tax quarters ended June 30, 1989, September 30, 1989, December 31, 1989, and March 31, 1990. In August 1990, the Debtor and the United States entered into a Stipulation And Order, resolving the Debtor's adversary proceeding against the United States, which this Court entered herein on August 10, 1990. Pursuant to the Stipulation And Order, the Debtor admitted that it had no interest in its accounts receivable generated prior to bankruptcy because those accounts had been seized by the United States pursuant to levy. Further, the Stipulation and Order permitted the United States to collect all such accounts receivable and apply the proceeds received by the United States to the Debtor's outstanding tax liabilities asserted in the IRS' amended Proof of Claim, filed July 3, 1990. Finally, pursuant to the Stipulation And Agreed Order, the Court dismissed without prejudice the Debtor's Adversary Proceeding No. 90 A 0452.

On March 29, 1993, the Debtor filed the instant Supplemental Objection To Claims of the Internal Revenue Service. In its Supplemental Objection, the Debtor alleges that it has claims against the Internal Revenue Service for tortious acts and statutory violations based upon the United States' levy against its business, including the United States' levy of its account receivable. As a remedy for the alleged tortious actions and statutory violations, the Debtor maintains that it is entitled to a set-off, and to an order requiring the IRS to repay any amounts collected on said claims to the Debtor's bankruptcy estate.

On June 16, 1993, the United States filed a Motion To Dismiss Debtor's Supplemental Objection To Claims of the Internal Revenue Service arguing, *inter alia*, that the Debtor's claims were barred by sovereign immunity, and by the doctrine of estoppel. Its estoppel argument was that the Debtor should be barred from seeking a return of funds generated by the accounts receivable because the Debtor had stipulated it had no interest in those accounts. Its sovereign immunity argument, as is relevant here, was that the limited waiver of sovereign immunity provided by 11 U.S.C. § 106 does not apply because the Debtor does not have a viable counterclaim against the United States.

On March 9, 1994, the Court entered a Memorandum Opinion and Order granting in

part and denying in part the United States' Motion To Dismiss. Specifically, this Court granted the United States' Motion To Dismiss with respect to the Debtor's claim for recovery of the proceeds of its pre-petition accounts receivable on the grounds that the Debtor was estopped from making such a claim. However, this Court denied the United States' Motion To Dismiss with respect to the Debtor's action in tort, and held that pursuant to 11 U.S.C. § 106(b), the Debtor may assert a counterclaim for setoff, but that the Debtor is not entitled to any affirmative relief. The United States appealed.

On May 25, 1995, the Honorable Brian Barnett Duff, United States District Court for the Northern District of Illinois, in Case No. 94–CV–2504, dismissed the United States' appeal for lack of jurisdiction and remanded the matter to this Court. The instant trial followed.

## II. FINDINGS OF FACT

1. On May 23, 1990, the United States levied the business assets of the Debtor, Material Corporation, Inc., comprised of the Debtor's accounts receivable, inventory, and machinery, in an attempt to collect the Debtor's unpaid federal employment taxes.

2. The unpaid taxes included those amounts which had been withheld from its employees' wages, amounts that were held in trust by the Debtor for the United States. The amount of the Debtor's unpaid federal employment taxes are not in dispute and totalled $145,620.61 as of July 3, 1990, the date of the IRS' Amended Proof of Claim.

3. The sole stockholder of the Debtor corporation was Geraldine Kew. However, the Debtor corporation was operated principally by Mrs. Kew's husband, Robert Kew, the President of the Debtor corporation.

4. Mr. Kew had previously owned and operated two similar corporations, Macor Stairs, Inc. and Macor Industries, Inc., and both of these corporations went out of business owing substantial federal tax liabilities. Specifically, Mr. Kew testified at trial that

Macor Industries, Inc. was liquidated in 1988 with outstanding withholding taxes in excess of $100,000.00, and that Macor Stairs, Inc., which was incorporated in 1988, filed for bankruptcy in 1989 with outstanding withholding taxes of approximately $40,000.00. Mr. Kew also testified that he had been personally assessed as a responsible person for failing to turn over the withholding taxes of these two prior corporations to the IRS, and that these tax liabilities had still not been paid as of the date of trial.

In both instances, Mr. Kew reacquired the assets of the prior corporations and continued to operate under another corporate entity thereafter. Material Corporation, Inc. fit Mr. Kew's method of operation on this point.

5. On May 23, 1990, the IRS agents executing the levy of the Debtor's business assets were given consent to enter the Debtor's premises by Mr. John Kendall. Mr. Kendall was one of the Debtor's largest customers and had invested capital and equipment in the Debtor corporation for a right to an ownership interest. Prior to the date of seizure, Mr. Kendall had been meeting with the IRS on behalf of the Debtor corporation. Mr. Kendall had the right to be on the Debtor's premises because he was one of the Debtor's "insiders," and because he was viewed by Debtor's principals as holding a right to an ownership interest therein. Mr. Kendall had keys to the Debtor's building, and Mr. Kendall's status with the Debtor corporation gave him the right to enter any part of its building, including the president's office, and to review the corporate books and records. Moreover, prior to the date of seizure, Mr. Kendall had exclusive control over the Debtor's checking account, and Mr. Kendall was the only person authorized to sign checks issued from such checking account.

6. On May 23, 1990, Mr. Kew was also present when the IRS agents arrived to the Debtor's premises. Mr. Kew invited the IRS agents into his office. Mr. Kew then attempted to contact his attorney but was unsuccessful. Mr. Kew then assisted the agents in taking an inventory of the corpo-

rate assets and provided the agents with the corporate accounting records. Eventually, approximately one hour after the agents arrived and seized the Debtor's assets, Mr. Kew spoke with his attorney who advised Mr. Kew to object to the IRS' seizure. However, the agents did not leave and did not obtain a writ of entry.

7. Upon seizure of the business, the IRS arranged to have Mr. Kendall act as the custodian of the Debtor's assets. Pursuant to a written agreement between the IRS and Mr. Kendall, Mr. Kendall agreed to "store [the Debtor's] equipment and provide normal precautions against the mis-use, or vandalism of said equipment."

8. The IRS agents inventoried the business assets which were seized at the Debtor's premises by lots. However, no detail listing of the Debtor's inventory and material was compiled.

9. On June 1, 1990, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On July 5, 1990, the Court entered an Order turning over the business back to the Debtor. During the intervening period from June 1, 1990 to July 5, 1990, Mr. Kendall continued to conduct some business on the Debtor's premises.

10. The Debtor asserts that as a result of the IRS' actions it suffered damages totalling $899,714.18, which is comprised of the following three amounts: (1) $220,644.18 in cash or fixed assets; (2) $360,100.00 of profits that would have been generated from business that disappeared after the seizure; and (3) the loss of Material Corporation, Inc.'s book value of $319,000.00. However, the Debtor suffered no damages.

11. With respect to the Debtor's first claim for damages, for cash or fixed assets totalling $226,644.18, the Court finds that there was no diminution in value of property seized on May 23, 1990 when compared to property returned on July 5, 1990.

12. With respect to the Debtor's second claim for damages, for $360,100.00 of profits

that would have been generated from business that disappeared after the seizure, the Court finds that the Debtor suffered no lost profits because of the IRS' actions.

13. With respect to the Debtor's third claim for damages, for $319,000.00 for loss of the Debtor's book value, the Court finds that the Debtor's book value at May 23, 1990, immediately prior to the seizure, was negative and that the Debtor suffered no damages for loss of its book value.

## III. CONCLUSIONS OF LAW

### A. Jurisdiction

1. This is a core proceeding over which the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).

2. Pursuant to § 106(b) of the United States Bankruptcy Code, 11 U.S.C. 106(b), the Court has jurisdiction to entertain a counterclaim brought by the Debtor against the United States that (1) is property of the estate and (2) is limited to a setoff against the United States' claim. However, to the extent the Debtor asserts any claim with respect to which there is no independent waiver of sovereign immunity, this Court is without jurisdiction over said claim. Section 106(b) is clear that upon filing a proof of claim against the Debtor's estate, the United States subjected itself to counterclaims in Bankruptcy Court.

### B. Standing under 11 U.S.C. § 362(h).

3. The Debtor has also asserted claims for statutory violations of the automatic stay under 11 U.S.C. § 362(h). However, the Debtor lacks standing under § 362(h) to bring such a claim.

Section 362(h) provides that:

An *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate

circumstances, may recover punitive damages.

(Emphasis added). The dispositive aspect of Section 362(h) at issue here is the use of the term "individual" as opposed to, for example, "person." The term "individual" applies only to human debtors, while the term "person" encompasses legal entities such as corporations and partnerships. Since the debtor herein is a corporation, and not a natural person, it does not have standing to claim damages under § 362(h). *See In re Prairie Trunk Ry.,* 125 B.R. 217 (N.D.Ill.1991); *In re Chateaugay Corp.,* 920 F.2d 183 (2nd Cir. 1990); *but see, Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289 (4th Cir.1986).

■ 4. In the present case the Court finds that Mr. Kendall had apparent authority to consent to the May 23, 1990 seizure by the IRS. Mr. Kew's own testimony established that Mr. Kendall had invested capital and equipment in the Debtor corporation for a right to an ownership interest, that he was an insider, and that prior to the date of seizure, Mr. Kendall had been meeting with the IRS on behalf of the Debtor corporation. Mr. Kendall had keys to the building and had the right to be on the Debtor's premises both because he was one of the Debtor's major customers, and because he was viewed by the Debtor's principals as holding a right to an ownership interest therein. Mr. Kew conceded at trial that Mr. Kendall's status with the corporation gave him the right to enter any part of the Debtor's premises at any time, including the president's office, and to review the corporate books and records. Moreover, prior to the date of seizure, Mr. Kendall had exclusive control over the Debtor's checking account, and Mr. Kendall was the only person authorized to sign checks issued from such checking account. Clearly, Mr. Kendall had apparent authority to consent to the IRS' seizure.

■ 5. Alternatively, Mr. Kew implicitly consented to the IRS' entry to the premises and seizure of the corporate assets. Consent may be implied by the circumstances surrounding the IRS' entrance and seizure, *see, e.g., United States v. McGuire,* 957 F.2d 310, 314 (7th Cir.1992), or by an authorized individual's failure to object. *See, United States v. Martel–Martines,* 988 F.2d 855, 858 (8th Cir.1993). Mr. Kew invited the IRS agents onto the premises and into his office and he assisted the agents in taking an inventory of the assets. It was only after Mr. Kew spoke with his attorney, approximately one hour after the IRS agents arrived, that Mr. Kew finally objected. By then, however, it was too late. The IRS agents' entry on the premises had been consensual, and thus, the seizure was proper.

6. Third, the Debtor alleges that after the seizure of the property, the IRS put John Kendall, an interested person, in control of the Debtor's assets as their agent, and, pursuant to that authority, the agent of the IRS wrongfully wasted and mismanaged the property of the Debtor. However, the evidence presented at trial failed to establish that the Debtor's property was wrongfully wasted or mismanaged.

7. Fourth, the Debtor alleges that the IRS had full knowledge and gave support to the formation of a competing corporation, said corporation being set up with the assets and employees of the Debtor. However, the Debtor failed to present any evidence to support the Debtor's fourth allegation.

8. Fifth, the Debtor alleges the IRS unreasonably and vexatiously tried to interfere with and undermine the Debtor's reorganization by filing frivolous objections to the Debtor's Chapter 11 petition. At trial, the Debtor failed to identify any objections raised by the IRS and never established that the IRS filed anything that was frivolous.

9. Sixth, the Debtor alleges that at various times during the bankruptcy proceedings, agents of the IRS defamed the Debtor by calling numerous individuals not involved in the bankruptcy and misinforming those individuals about the affairs and status of the Debtor. Again, the Debtor failed to present any evidence at trial to support its allegation that the Debtor was defamed or that any

individuals were misinformed. Finally, any claim regarding the IRS' attempts to collect taxes personally owed by Mr. Kew as a responsible person of his prior corporations is not actionable in the present case.

10. Seventh, the Debtor alleges that in violation of an agreement entered into on or about July 1990, in which the IRS retained possession of the Debtor's receivables and was to use those receivables to collect monies to satisfy all the Debtor's tax debt, the IRS failed to make an appropriate attempt to collect the receivables, thereby allowing said receivables to become stale. The Court has already ruled that the Debtor is estopped from any such claims "with respect to any recovery of payments the government collected on certain of Debtor's accounts receivable," due to the Stipulation and Order previously entered herein on August 10, 1990.

11. Finally, the Debtor alleges the IRS violated 11 U.S.C. § 362(h). However, at trial, the Debtor failed to establish any such violation, and the Court finds that the United States has not willfully violated the automatic stay.