**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Miguel MARTEL–MARTINES,**
**Defendant–Appellant.**

**No. 92–2365.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1992.
Decided March 19, 1993.

Micholas A. DeJohn, Chicago, IL, argued (Domingo F. Vargas, on brief), for defendant-appellant.

Sam C. Bertolet, St. Louis, MO, argued (John J. Ware, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before RICHARD S. ARNOLD, Chief Judge, LOKEN, Circuit Judge, and ROSENBAUM,* District Judge.

LOKEN, Circuit Judge.

After pleading guilty to possession with intent to distribute over five kilograms of cocaine, Miguel Martel–Martines appeals the district court's[1] refusal to suppress evidence seized after police searched a concealed compartment in his truck. We affirm.

I.

The following summary is taken from the magistrate judge's[2] findings of fact entered after an evidentiary suppression hearing. Missouri Highway Patrol Officer Shawn Moore stopped a late-model Nissan pickup truck for speeding at 10:35 p.m. on August 19, 1991, near St. Louis. The driver, Martel–Martines, produced an Illinois driver's license and a title document showing the truck was owned by Caesar Lopez. Martel–Martines said he worked as a restaurant cook in Aurora, Illinois, and had purchased the truck in California from Caesar Lopez.

After confirming by radio that Martel–Martines's license was valid and that the truck was registered to Caesar Lopez, Trooper Moore returned the driver's license and title card to Martel–Martines and issued a verbal warning for the speeding violation. Trooper Moore asked if Martel–Martines was carrying anything illegal in the truck, suspecting that he could not have afforded to buy the truck on a cook's wages. "Oh, no," Martel–Martines an-

---

* The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

1. The HONORABLE JEAN C. HAMILTON, United States District Judge for the Eastern District of Missouri.

2. The HONORABLE DAVID D. NOCE, United States Magistrate Judge for the Eastern District of Missouri.

swered. Trooper Moore then asked if he could search the truck. Martel–Martines replied, "sure, go ahead." At Trooper Moore's request, Martel–Martines opened a locked metal box attached to the truck. The box contained tools and a cellular telephone and adapter, but no illegal substances.

Trooper Moore then walked to the rear of the truck and saw a custom-cut plywood board covering the length of the truck bed. He lifted the board and saw two lines of caulking in the metal bed. Looking underneath the truck with his flashlight, Trooper Moore could see that the truck bed had recently been reconstructed to support a concealed compartment several feet long and four to six inches deep. Trooper Moore removed the plywood, stepped up into the truck bed, and noticed that the sheetmetal floor gave as he walked on it. He asked Martel–Martines if there were drugs inside the hidden compartment; Martel–Martines said, "No, I have no drugs."

Trooper Moore radioed for a K–9 unit, but was told that the regular dog handler was sick and a backup would have to be found. Corporal Gary Heskett of the Highway Patrol arrived moments later and was briefed by Trooper Moore. Heskett asked Martel–Martines if the officers could search the truck. Martel–Martines said that he understood he had the right to refuse and that they could search the truck. Though Trooper Moore now suspected that the truck was involved in criminal activity, had Martel–Martines wanted to leave, he could have done so.

After waiting for the K–9 unit another ten minutes, Corporal Heskett told Martel–Martines that the truck would be taken to the Troop C Headquarters garage because further examination would be too difficult and dangerous alongside the highway in the dark. Martel–Martines agreed to drive the truck to the Troop C garage, five miles away. At the garage, Trooper Moore asked whether the officers could drive the truck into one of the garage bays; Martel–Marines said, "Yes." The officers raised the truck on a hoist, inspected its underside, and lowered it again. Sergeant Sam Steward then removed the plywood and, with Martel–Martines watching from a few feet away, used a hammer and screwdriver to puncture the sheetmetal top of the hidden compartment. Martel–Martines neither objected to nor specifically approved of this procedure.

When the small hole had been made, Trooper Moore stepped onto the truck bed, smelled ammonia or ether, shined his flashlight into the hole, and observed cellophane wrapping around a brown object inside the compartment. Believing that the compartment contained cocaine, Trooper Moore arrested Martel–Martines. A police dog soon arrived and alerted to the punctured compartment. At 11:55 p.m., a police mechanic arrived, dismantled the truck bed, and discovered that the compartment contained 52.15 kilograms of cocaine in forty-eight wrapped packages. Additional cocaine and $2450 in cash were found during an inventory search of the vehicle.

Martel–Martines was indicted and moved to suppress the evidence seized from the truck. Four law enforcement officers testified at the evidentiary hearing. Martel–Martines did not. Magistrate Noce recommended that the motion be denied, concluding:

> Defendant's oral consent for Trooper Moore to initially search the truck, his consent to unlock the tool box so that Moore could search it, his consent for the additional officers to search the truck (when defendant was expressly advised of his right to refuse to consent and he said he understood this and said they could still search the truck), his agreement to drive the Nissan to the Trooper C headquarters, and his consent for the officer to drive the truck into the garage bay, were all voluntarily given without coercion.... Defendant, by his express consent to all, and failures to object to any, of these searches, examinations, and movements of the truck, impliedly consented to the small hole being punched in the bed of the truck with the screwdriver.

The district court adopted the magistrate judge's report and denied the motion to

suppress. Martel–Martines appeals that ruling.

## II.

Martel–Martines concedes that he voluntarily consented to the officers' initial searches of his truck. His principal contention on appeal is that they failed to obtain his further consent before punching a hole in the bed of the truck. Therefore, their subsequent discovery and seizure of the cocaine in the hidden compartment violated his Fourth Amendment rights. We disagree.

■■■ A consensual search may not exceed the scope of the consent given. *See United States v. Rudolph*, 970 F.2d 467, 468 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1023, 122 L.Ed.2d 169 (1993). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, —— U.S. ——, ——, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991). The district court concluded that Martel–Martines's repeated prior consents to search the truck for drugs included an implied consent to search the concealed compartment. The clearly erroneous standard governs our review of this issue. *See United States v. McKines*, 933 F.2d 1412, 1424 (8th Cir.) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

■■■ "The scope of a search is generally defined by its expressed object." *Jimeno*, —— U.S. at ——, 111 S.Ct. at 1804. Here, as in *Jimeno*, the officers made it clear that, if permitted, they would search for narcotics—indeed, Trooper Moore specifically asked Martel–Martines if there were drugs concealed within the hidden compartment. Both alongside the highway and again at the Troop C garage, Martel–Martines granted unrestricted permission to search his truck. At the garage, he watched in silence as the officers examined the truck on a hoist, lowered it, and prepared to puncture the sheetmetal that covered the secret compartment. Though consent may be withdrawn, Martel–Martines's passive conduct fell far short of the "unequivocal act or statement of withdrawal" required. *United States v. Alfaro*, 935 F.2d 64, 67 (5th Cir.1991); *see also United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986) (fourteen minutes of silent observation indicated that the search was within the scope of defendant's consent). Rather, Martel–Martines's failure to object made it objectively reasonable for the officers to conclude that his general consent to search the truck included consent to access the compartment in a minimally intrusive manner.[3] *See United States v. Chaidez*, 906 F.2d 377, 382–83 (8th Cir.1990). Thus, the district court's finding of implied consent is not clearly erroneous.

■■■ Moreover, as the government argues, even if Martel–Martines's consent did not extend to the hole-punching procedure, the officers had by that time probable cause to support a warrantless search of the concealed compartment. Probable cause exists when, "given all the circumstances, there is a fair probability that contraband will be found in a particular place." *United States v. Walker*, 900 F.2d 1201, 1204 (8th Cir.1990), citing *Illinois v. Gates*, 462 U.S. 213, 228, 103 S.Ct. 2317, 2326, 76 L.Ed.2d 527 (1983). Trooper Moore's suspicions were aroused by Martel–Martines's evasive and inconsistent responses to routine questions, particularly about his purchase of the truck. When Trooper Moore

---

**3.** Martel–Martines has not challenged the means used by the officers to access the hidden compartment. The officers testified that they were unable to find any entry to the compartment and did not have late-night access to the garage tools necessary to remove the compartment from the truck. The small puncture hole in the concealed compartment was reasonable under these circumstances. *See United States v. Pena*, 920 F.2d 1509, 1512 (10th Cir.1990) (removing interior vent panel), *cert. denied*, —— U.S. ——, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991); *United States v. Battista*, 876 F.2d 201, 208 (D.C.Cir.1989) (penknife probe of package in suitcase); *United States v. Olivier–Becerril*, 861 F.2d 424, 425 (5th Cir.1988) (punching small hole in spare tire well).

and Corporal Heskett examined the truck, they noted that its bed had been lowered, the underside modified, and an inaccessible hidden compartment built. Information gathered during a consensual search can provide probable cause to search a vehicle more thoroughly or even to arrest its occupants. *See United States v. Strickland,* 902 F.2d 937, 942–43 (11th Cir.1990) (probable cause to search rusted, oversize, incongruous spare tire); *United States v. Benevento,* 836 F.2d 60, 66–67 (2d Cir.1987) (probable cause to search car's hidden compartment), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988). Here, the officers acquired probable cause to conduct a warrantless search of the hidden compartment, either alongside the highway or at the Troop C garage. *See Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 3080, 73 L.Ed.2d 750 (1982); *United States v. Ross,* 456 U.S. 798, 807, 102 S.Ct. 2157, 2163, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

 Finally, Martel–Martines argues that the government failed to prove valid consent for the search because he was not asked to sign a written consent form that the Missouri State Highway Patrol uses. Martel–Martines cites no authority supporting this contention. We conclude that it is foreclosed by *Schneckloth v. Bustamonte,* 412 U.S. 218, 234, 93 S.Ct. 2041, 2051, 36 L.Ed.2d 854 (1973), in which the Supreme Court held that "knowledge of a right to refuse is not a prerequisite of a voluntary consent." Since Martel–Martines concedes that his roadside consents were voluntary, whether he signed a standard consent form is immaterial. *See Chaidez,* 906 F.2d at 381.

The judgment of the district court is affirmed.