# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2630

_____

| | | |
|---|---|---|
| Bennie Rozman, doing business as Lynde Investment Company, | * * * | |
| Plaintiff/Appellant, | * * | |
| Susan Rodriguez, Sherri Boniarczyk, | * * | |
| Intervenor Plaintiff, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Minnesota. |
| City of Columbia Heights, Joseph Sturdevant, Walt Fehst, Meg Jones, Robert W. Ruettimann, Charles Kewatt, Lowell G. Demars, Matt D. Field, Garry Gorman, Rollin Goldsberry, | * * * * * * | |
| Defendants/Appellees. | * | |

_____

Submitted: May 12, 2000
Filed: August 8, 2000

_____

Before MCMILLIAN, BRIGHT, and WOOD[1], Circuit Judges.

_____

[1]The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

BRIGHT, Circuit Judge.

Bennie Rozman ("Rozman"), d/b/a Lynde Investment Company, appeals the district court's grant of summary judgment to the City of Columbia Heights ("City"). Rozman sued the City in district court for allegedly violating his Fifth and Fourteenth Amendment rights under 42 U.S.C. § 1983, violating his Fourth Amendment rights, and violating his constitutional right to equal protection under 42 U.S.C. § 1985(3). Rozman also sought a preliminary injunction preventing the City from revoking Rozman's rental licenses. The court rejected Rozman's numerous constitutional claims and denied his motion for a preliminary injunction against the City. Rozman further asked the district court to exert supplemental jurisdiction over his pendent state law claims, but the court dismissed them without prejudice upon granting summary judgment to the City on Rozman's federal claims.

Rozman now asks this court to reverse the district court's grant of summary judgment on his substantive due process claim under § 1983, and he requests that this court direct the district court to exercise supplemental jurisdiction over his state law claims. We reject these requests and affirm.

I.     **Background**

The City of Columbia Heights requires owners of residential rental property to obtain rental licenses before they may rent their properties to tenants. Rental property owners must then renew these licenses annually. Since 1994, the City's Housing Maintenance Code ("City Code"), under § 5A.303(1), has required the City to inspect rental housing annually. Since the annual inspection requirement has been in effect, City practice has been to schedule a date for rental apartment inspection with the landlord, and require that landlords notify their tenants that the City intends to conduct the inspection. The inspections routinely coincide with the annual renewal of each rental property's rental license.

The City Code empowers City inspectors to conduct the annual inspection on twenty-four hours notice "to the owner, occupant, manager, or person in charge" of the dwelling. Section 5A.301(1).[2] Under §§ 5A.603 and 5A.608, the owner or occupant may not refuse to allow the inspector to enter the premises. The City Code further states that violation of any provision of the Code is a misdemeanor. See § 5A.611. Finally, § 5A.302 of the Code explains that the City may obtain search warrants for the inspections if the owner or occupant refuses to provide access to the dwelling.

At the time he initiated this lawsuit, Rozman owned and managed twelve residential rental properties in Columbia Heights, Minnesota. Rozman complied with the City's annual inspection program until 1996, at which time his concerns about the constitutionality of the program motivated him to refuse to perform the landlord's expected role in the City's inspection program. Rozman informed the City that he would neither give notice to his tenants of the upcoming inspection, nor would he grant access to any of the rental units without a showing that the City had either the tenant's consent to enter his or her apartment or a search warrant. The City then sent a letter

_____

[2]City Code § 5A.301(1) provides in its entirety:

The City Manager and his/her designated agents, as the Building Official who shall administer and enforce the provisions of this ordinance, may enter for the purpose of inspection, any rental dwelling (whether it be standing alone or as a unit in a larger complex or units), or premises, upon twenty-four (24) hours notice to the owner, occupant, manager, or person in charge of the rental dwelling or premises. Inspection shall be conducted during reasonble [sic] hours, and upon request the Building Official shall present evidence of his/her official capacity to the owner, occupant or person in charge of a dwelling unit sought to be inspected. With regard to owned occupied single family dwelling units, the Building Official shall have the authority to enter onto the premises, during reasonable hours, for inspection of the exterior of the building.

Add. at 19.

to Rozman threatening to refuse to renew his license. After a series of negotiations, a public meeting, and a "workshop" meeting between Rozman and the City Council, the Council voted, on March 10, 1997, to revoke Rozman's rental licenses due to his refusal to schedule the required annual inspection of the rental units. At no time during its interactions with Rozman did the City seek or obtain a search warrant for entry into any of the units that he managed.

After the City refused to renew his rental license, Rozman brought this action in district court alleging numerous constitutional violations, alleging state law violations, and praying for damages under § 1983 as well as injunctive relief. The district court granted summary judgment to the City on all federal claims, denied the injunction, and dismissed Rozman's state claims without prejudice. In its summary judgment order, the district court construed the pertinent sections of the City Code in a manner that would clarify certain issues and preserve the ordinances' constitutionality. Specifically, the court interpreted the City Code provision regarding notice, § 5A.301(1), to mean that the City may notify the property owner of a planned inspection and have the owner notify the tenants individually. In addition, the district court interpreted §§ 5A.603 and 5A.608, regarding access to the premises, to incorporate the caveat that, absent an occupant's consent to enter and search the premises, the City must present a valid search warrant before these provisions take effect.

## II.    Discussion

On appeal, Rozman pursues his substantive due process claim against the City. Rozman argues that, to the extent that the City Code empowers the City to violate his tenants' Fourth Amendment rights, it is unconstitutional; therefore, conditioning his license renewal on compliance with an unconstitutional statute is arbitrary and capricious. He further argues that, unless the City obtains his tenants' consent or secures an administrative search warrant, it is an unconstitutional condition to require that he assist the City in violating his tenants' Fourth Amendment rights before he can

-4-

obtain a license renewal.[3] Underlying Rozman's argument is the presumption that the City has refused to renew his license because he would not provide the City with access to the rental units unless the City could show that it had obtained tenant consent to enter or a valid search warrant. Conversely, the City has argued that it only requires landlords to notify tenants of the inspection before renewing the license. As the district court aptly notes, "The City claims that the 'failure' described in the revocation was failure to give notice to tenants of the upcoming inspection. Plaintiff [Rozman] claims that the 'failure' was instead failure to give the inspectors access to individual apartments without the permission of the occupant." Add. at 4. We find no clear error in the district court's finding that the City refused to renew Rozman's license because he failed to schedule an inspection date and notify his tenants of that date.[4]

In a § 1983 suit against a municipality, we must determine two separate issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." Collins v. City of Harker Heights,

---

[3]Rozman also raises for the first time on appeal, the argument that the City revoked Rozman's rental licenses in retaliation for exercising his constitutionally protected rights. As a general rule, this court does not review arguments raised for the first time on appeal, see Central Airlines, Inc. v. United States, 169 F.3d 1174, 1175 (8th Cir. 1999), nor will we do so here. Rozman presents cases in the Fifth Circuit that create an exception to this general rule when doing so would avoid manifest injustice. See, e.g., Higginbotham v. Ford Motor Co., 540 F.2d 762, 768 n.10 (5th Cir. 1976). Even if we adopted such an exception, it would not apply to the circumstances in this case.

[4]We do note, however, that the City suggests in its brief that it was Rozman's duty to obtain permission from the tenants for the City to enter their apartments. The district court's interpretation of the City Code does not support the City's implication, nor do we think the record supports this argument. Nevertheless, the district court did not find that Rozman's failure to obtain tenant consent was the basis for the City's refusal to renew Rozman's license, and we find no clear error in the district court's determination.

503 U.S. 115, 120 (1992). Here, the City takes responsibility for its actions, and the relevant facts relating to the City's actions against Rozman are largely undisputed.[5] Therefore, the central question is whether the City's actions violated any constitutional provision. Under the district court's construction of the City Code, with which we agree, we now hold that the City did not violate Rozman's constitutional rights.

The district court held that the City Code requires a landlord to grant the City inspectors access to tenants' apartments after the tenants have received notice of the proposed inspection and have consented to such inspections, or after the City has obtained a valid search warrant.[6] Under Camara v. Municipal Court of the City and County of San Francisco, 387 U.S. 523 (1967), the district court's construction of the City Code is the necessary construction. See Frisby v. Schultz, 487 U.S. 474, 483 (1988) (statutes will be interpreted to avoid constitutional difficulties). Camara subjects routine administrative searches of the home to Fourth Amendment scrutiny, and it requires that they occur only after consent or pursuant to a valid search warrant. 387 U.S. at 539. Therefore, the City Code, specifically § 5A.603, cannot require anyone to grant the City access to a dwelling for routine inspection unless the resident has consented or the City has obtained a valid search warrant for the premises.

---

[5]To the extent that the parties dispute pertinent facts, we see no clear error in the district court's factual findings, and so we defer to the district court's recitation of the relevant facts in this case.

[6]The district court stated, "If a tenant, after receiving notice, refuses to give his or her consent to the inspection, the landlord may be in violation of § 5A.603 if the landlord subsequently refuses to allow entry into that tenant's apartment . . . in the face of a valid search warrant." Add. at 11. The district court did not make explicit that a tenant's silence after receiving notice is not consent to the search under the Fourth Amendment. There must be some evidence of a tenant's affirmative consent before the landlord is required to allow the City access to the apartment in the absence of a valid search warrant.

The City terminated Rozman's rental licenses for his "failure to allow inspection of the rental units." The City may constitutionally require the landlord to notify tenants of the City inspection. Such a requirement is not so fundamentally unfair that it rises to the level of a substantive due process violation. See Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104-05 (8th Cir. 1992) (government action must be irrational in order to violate substantive due process). Furthermore, providing notice to a tenant does not violate either the landlord's or the tenant's constitutional rights.

To the extent that Rozman requests this court to construe state and municipal statutes for non-constitutional reasons, we decline to do so and leave that matter to the state courts. We do note, however, that the City Code, as currently written, is not reasonably susceptible to a reading that requires landlords to obtain tenants' consent to the administrative search. Under the Fourth Amendment, in the absence of a search warrant, a tenant must give consent before the City's agents may lawfully enter the tenant's residence. Tenant consent to the search may be express or implied,[7] but it is clear that the City's agents must be able to show that "consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." Bumper v. State of N.C., 391 U.S. 543, 548-49 (1968) (footnote omitted).

Given the facts as found by the district court, we find no constitutional violation in requiring a landlord to provide notice to his tenants of proposed City inspections for purposes of enforcing the City Code. Because we affirm the district court's dismissal

---

[7]There is some suggestion in the case law that consent may be implied from the totality of the circumstances, see, e.g., United States v. Martel-Martines, 988 F.2d 855, 858 (8th Cir. 1993) (failure to object to continuation of search constituted implied consent) and Johnson v. Smith County, Tex., 834 F.2d 479, 480 (5th Cir. 1987) (failure to object allowed inference of implied consent); nevertheless, in the absence of a warrant, the government must be able to show that it searched pursuant to voluntarily given consent.

of Rozman's federal claims, we decline to require the district court to reassert jurisdiction over Rozman's state law claims.

## III.    Conclusion

For the reasons stated above, we affirm the district court's dismissal on summary judgment.  Each party shall pay its own costs.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.