# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3872

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Victor Barragan, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 14, 2004
Filed: August 17, 2004

_____

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Victor Barragan appeals the district court's[1] denial of his motion to suppress and to return seized evidence. We affirm.

_____

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

I.

On February 14, 2003, Trooper Kurt Frazey of the Nebraska State Patrol was patrolling Interstate 80 near Lincoln, Nebraska. He observed a westbound Ford Expedition, and concluded that the driver had committed several violations of Nebraska law by having no front license plate, following too closely, displaying an obstructed temporary tag or in-transit sticker, speeding, and hanging a "vision obstruction" (a large air freshener) from the rear view mirror. After stopping the vehicle, Frazey approached the passenger side and informed the occupants that he stopped the vehicle for following too closely and having an obstructed rear plate. A video camera in Frazey's patrol car recorded the encounter, but because of a microphone battery failure, approximately the first forty-five minutes of the taped encounter has no audio.[2]

Seated inside the Expedition were Daniel Ruelas, Jr., in the driver's seat, Carlos Ruelas, Jr., in the front passenger seat, and a man apparently sleeping in the back seat, identified as "Silva," an alias used by Barragan. Frazey informed Daniel Ruelas that a warning ticket would be issued, and took Daniel back to his patrol car. In his patrol car, Frazey ran a check on the Expedition, and a driver and criminal history on Daniel. Daniel gave Frazey a retail sale certificate, a New York certificate of title, and a bill of sale for the Expedition. Verification of the Expedition's registration took some time because it had been registered in a state other than where it was purchased.

---

[2]Barragan argues that Frazey intentionally turned off his microphone. The magistrate judge recommended a finding that Frazey's explanation regarding a dead battery was credible, and Barragan filed no objections to the report and recommendation, which the district court adopted. We review the district court's factual findings for plain error, *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998), and we find none here. After Trooper Stahl arrived on the scene, Stahl can be heard on his separate videotape stating that he is looking for a battery. Shortly thereafter, Frazey's microphone began working again.

For the next forty minutes or so, while computer checks were undertaken, Frazey engaged Daniel, Carlos, and Barragan in conversation regarding their itineraries.

Frazey first questioned Daniel, and found aspects of his story odd. For example, Daniel stated he was on vacation visiting family members, yet he did not have his own immediate family with him. While Daniel remained in the patrol car, Frazey returned to the Expedition to question Carlos and Barragan about their itineraries. Frazey's suspicions were further aroused when the two men gave itineraries different from each other, and from Daniel's. Frazey returned to his patrol car twice during this time to run criminal history checks on Carlos and Barragan after getting their driver's licenses.

After completing the paperwork for Daniel's warning ticket at his patrol car, Frazey informed Daniel that the stop was completed, but inquired if he could ask a few more questions. Daniel agreed. Frazey asked if there were any guns, drugs, explosives, or large amounts of money in the Expedition. Daniel had been relaxed and open up to this point, but he suddenly exhibited signs of nervousness, such as a visible pulse in his carotid artery and avoidance of eye contact. He denied that any such items were in his vehicle. Frazey requested Daniel's consent to search the vehicle for such items. Daniel agreed, and signed a written consent form in Spanish. While Daniel remained in the patrol car, Frazey approached the Expedition, and asked Carlos and Barragan if they would consent to Frazey's search of their persons and belongings. Both gave oral consent,[3] and were placed in Trooper Stahl's vehicle, which had arrived shortly before. Frazey did not obtain written consent to search the

---

[3]Barragan claimed that he denied consent while Frazey's microphone was not working. Frazey testified, however, that Barragan consented both before and after audio was restored, and Frazey can be heard asking for Barragan's consent after his microphone started working again. Barragan did not object to the recommended finding of the magistrate judge, and we find no plain error in the district court's determination.

Expedition from either Carlos or Barragan, because neither appeared to have an ownership interest in the vehicle.

As part of his search of the Expedition, Frazey cleared the rear cargo compartment. He noticed that the carpet appeared to be non-factory installed and glued down, which he found unusual. After forcing up the glued-down carpet, Frazey found a piano hinge that ran the width of the vehicle between the wheel wells and appeared to secure the top of a false compartment. At this point, Frazey directed that all three of the Expedition's occupants be handcuffed. He informed the trio that they were not being arrested, but only detained until the contents of the false compartment could be determined.

Frazey's initial attempts to open the compartment failed, as it was electronically activated. Frazey then located the appropriate wires, and short-circuited the hydraulic system controlling the compartment to open it. Inside the compartment, Frazey found 16 vacuum-sealed packages of United States currency totaling over $485,000, a hard plastic case containing a TEC-9 semiautomatic gun with scope, and several handguns with ammunition.

Barragan was indicted by a grand jury on one count of attempting to export firearms from the United States to Mexico, in violation of 22 U.S.C. §§ 2778(b)(2) and 2778(c), and one count of transporting with intent to deliver firearms to a person not residing in the same state, in violation of 18 U.S.C. § 922(a)(5). Barragan filed a motion to suppress all evidence seized from the vehicle. The magistrate judge conducted an evidentiary hearing, and recommended that the motion be denied. The magistrate concluded that Barragan did not have standing to challenge the search of the Expedition, but could challenge the stop of the vehicle, any illegal detention of him, and the search of his own belongings and person. Barragan never objected to the factual findings or legal conclusions of the magistrate judge.

The district court noted the absence of objections, but nonetheless reviewed the report and recommendation *de novo*, and then adopted it. Barragan pleaded guilty to the first count of the indictment pursuant to Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the denial of his motion to suppress. We review *de novo* the district court's legal conclusions. *United States v. Petty*, 367 F.3d 1009, 1011 (8th Cir. 2004). "[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error." *United States v. Looking*, 156 F.3d at 809.

## II.

### A.

Barragan first asserts that Trooper Frazey's stop of the Expedition was unreasonable because Frazey used *de minimis* traffic violations to justify the stop. "An officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle, even if the officer would have ignored the violation but for a suspicion that greater crimes are afoot." *United States v. Enriquez Luna*, 368 F.3d 876, 878 (8th Cir. 2004). Frazey testified to witnessing numerous violations that would have given him probable cause to stop the Expedition, including that the vehicle was traveling in excess of the posted speed limit, was following another vehicle too closely, and had an obstruction in the windshield. There was no plain error in the district court's findings that Frazey observed these violations, and any one of them gave Frazey probable cause to stop the vehicle. *See* Neb. Rev. Stat. §§ 60-6,186(1) (speeding), 60-6,140(1) (following), 60-6,256 (obstructions); *United States v. Ramos-Caraballo*, No. 03-2274, 2004 WL 1647383, at *2-3 (8th Cir. July 26, 2004).

Barragan also claims that the length of the stop was unreasonably long. We disagree. Once the stop of a vehicle has occurred, a "police officer may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999); *see also United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003). "[I]f the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions." *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993). An officer may also question a vehicle's passengers to verify information provided by the driver, *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002), and conflicting stories may provide justification to expand the scope of the stop and detain the occupants. *Brown*, 345 F.3d at 578.

The district court found that Frazey lawfully ran checks on the Expedition and on Daniel Ruelas, and that the check of the Expedition took longer than normal because it had been registered in a state other than where it was purchased. The court also found that the conflicting stories given by the occupants aroused Frazey's suspicions. And the court determined that Daniel Ruelas consented to the search very shortly after Frazey gave him the citation. We find no error in any of these factual findings, or in the district court's legal conclusion that the duration of the stop was permissible. Because Trooper Frazey had adequate reason to justify the length of the stop under these facts, Barragan's claim of an unreasonable seizure is without merit.

B.

Second, Barragan claims that the "fruits" of his arrest must be suppressed, because he was arrested without probable cause. This contention is flawed, however, because Trooper Frazey's discovery of the hidden compartment and its contents was

the result of Daniel Ruelas's independent consent to search the Expedition. The money, guns, and ammunition are therefore not the fruit of Barragan's arrest, whether or not it was supported by probable cause. *See United States v. Green*, 275 F.3d 694, 700 (8th Cir. 2001) ("Although Green's detention may have violated his Fourth Amendment rights, that violation is independent and separate from the discovery of the drugs, which rested on [the owner's] freely given consent to search the car.").

C.

Finally, Barragan argues that he did not give his valid consent to search the Expedition. In the alternative, Barragan claims that if he did consent, his lengthy detention renders his consent invalid, that any consent given by any of the occupants was revoked when they refused to inform Trooper Frazey how to open the compartment, and that Frazey exceeded the scope of any consent when he broke into the compartment. The government responds by arguing that Barragan's consent is irrelevant, because he did not have standing to challenge the search at all.

Fourth Amendment rights are personal rights that may not be asserted vicariously. *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). An individual asserting Fourth Amendment rights "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994).

We conclude that Barragan did not have standing to challenge the search of the Expedition. In *Rakas*, the Supreme Court held that the defendants did not have a legitimate expectation of privacy in the glove compartment or area under the seat in a car in which they were "merely passengers." 439 U.S. at 148-49. "Like the trunk

-7-

of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." *Id.*; *see also United States v. Macklin*, 902 F.2d 1320, 1330-31 (8th Cir. 1990). At the suppression hearing, Barragan testified that his name did not appear on any ownership documents, and that he did not have an ownership interest in the Expedition. As a mere passenger, therefore, Barragan could not claim a legitimate privacy interest in one of his "effects," U.S. Const., amend. IV, and he lacks standing to challenge the search of the vehicle. *See also Green*, 275 F.3d at 699.

In the alternative, the district court also found that Trooper Frazey reasonably believed he had consent from Daniel Ruelas to search the Expedition. This is a finding of fact, *United States v. Sanchez*, 32 F.3d 1330, 1335 (8th Cir. 1994), and the court's finding did not constitute plain error. "[W]hether or not the suspect has actually consented to a search, the Fourth Amendment requires only that the police reasonably believe the search to be consensual." *United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998). The district court found that Daniel, the driver and owner of the vehicle, orally consented to the search twice, and Daniel can be heard on the videotape giving his consent the second time.

We reject Barragan's argument that the alleged refusal of the occupants to assist Frazey in opening the false compartment operated to limit or revoke the prior consent. The district court made no factual findings about how the occupants reacted to questions from Frazey about the compartment. Frazey testified that because he wanted to minimize damage, he asked each of the occupants how to open the compartment, but all three stated they were not aware of the compartment's existence, and did not know how to open it. The record does not support a claim that the occupants explicitly revoked consent, and we find no plain error in the district court's implicit conclusion that it was reasonable for Frazey to conclude that the responses of the occupants merely maintained the *status quo*.

Nor do we believe the district court committed plain error in finding that Frazey reasonably believed that he had consent to search the false compartment. When Daniel gave consent to search the entire automobile for currency, drugs, and explosives, it was reasonable for the officer to believe that the owner's consent extended to a compartment that was an integral part of the vehicle. *United States v. Martel-Martines*, 988 F.2d 855, 858 (8th Cir. 1993) (defendant's prior consent to search, and passive conduct and silence while officers punctured hidden compartment, gave officers reasonable belief that defendant consented to puncturing); *United States v. Marquez*, 337 F.3d 1203, 1207-08 (10th Cir. 2003). For these reasons, even if Barragan had standing to challenge the search, no violation of the Fourth Amendment occurred.

\* \* \*

For the foregoing reasons, we affirm the judgment of the district court.

_____