# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3545

_____

United States of America,              \*

                 \*

         Appellee,      \*

                 \*     Appeal from the United States

    v.               \*     District Court for the District of

                 \*     Nebraska.

Michael Siwek,              \*

                 \*

         Appellant.     \*

_____

Submitted: March 16, 2006
Filed: July 17, 2006

_____

Before COLLOTON, JOHN R. GIBSON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.


Michael Siwek entered a conditional guilty plea to possession with intent to distribute marijuana and criminal forfeiture. He appeals the denial by the district court[1] of his motion to suppress evidence obtained in a search of his vehicle. We affirm.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

## I.    BACKGROUND

On November 12, 2004, Nebraska State Patrol Trooper Greg Goltz was stationed in his marked patrol car monitoring traffic on Interstate 80 near the Giltner interchange in Hamilton County, Nebraska. The interchange consisted of a single-lane on- and off-ramp in each direction. Goltz had constructed a ruse checkpoint by posting signs just west of the interchange to alert motorists that a drug checkpoint, which did not exist, was ahead. Siwek was driving eastward on Interstate 80 in a 2001 Chevrolet four-door pickup truck with Minnesota plates and a hard tonneau cover on the truck bed. Goltz observed Siwek exit the interstate at the Giltner interchange and turn right at the stop sign. Goltz followed Siwek and activated his video recorder at 12:54 p.m. After approximately one mile, Siwek stopped for a railroad crossing. Goltz ran Siwek's license plate number and was advised that the number was not found in Minnesota's computer files.

Goltz continued to follow Siwek into Giltner but did not attempt to stop the truck. At an intersection in Giltner, Siwek exited his truck and walked back to Goltz's patrol car. Goltz lowered his window and asked Siwek if he was lost, to which Siwek responded that he was looking for a restaurant because he had seen a sign on the highway that read "eats." Goltz informed him that there was no such sign visible to eastbound traffic prior to the Giltner interchange. Then Goltz exited his patrol car to speak with Siwek. Goltz asked Siwek if he owned the truck and told Siwek that the license plate was not on file. Siwek responded that he had recently purchased the truck. He gave Goltz his insurance paperwork, which identified Siwek as the owner, and his Minnesota driver's license, which indicated that Siwek had a commercial driver's license. Siwek explained that he could not produce the registration for the truck because the state had not sent it to him yet.

Goltz then inquired about Siwek's trip. Siwek told him that he took several weeks of vacation from his work as a truck driver, drove a friend to Denver and was returning home to Robbinsdale, Minnesota. Goltz explained that people who exit the highway after seeing drug interdiction signs usually live in the vicinity or are transporting something illegal. Siwek nodded his head to acknowledge that he understood. Goltz then asked Siwek if the truck contained weapons, stolen property, cocaine or marijuana. Siwek said that it did not and moved objects in the truck cab to demonstrate to Goltz that he had none of these items.

Then Goltz asked, "Do you have any problem if I were to search to make sure that's all okay?" Siwek responded that he did not have any problem. Siwek gave this consent at 12:58 p.m. Goltz ran a check on Siwek's driver's license. While Goltz was waiting for the report, he began to search the truck. Goltz requested that Siwek stand next to the patrol car. Throughout most of the encounter, Siwek sat in the patrol car or stood leaning against the patrol car, but occasionally he walked toward the truck.

Goltz initially searched the front and back seats of the truck cab. Then he attempted to search the truck bed but discovered that the tonneau cover was locked. When Goltz asked Siwek for a key, Siwek explained that he did not have a key because the seller had not mailed it to him as agreed at the time of the purchase. Goltz asked to see the contents of Siwek's pockets. Siwek showed Goltz his pockets, which contained no keys or contraband. In the course of their conversation, Siwek told Goltz that he did not think there was anything stored under the tonneau cover but was not certain.

Goltz informed Siwek at approximately 1:02 p.m. that he intended to call for a locksmith to open the truck bed or for a drug detection canine to sniff the entire truck. Goltz requested a drug-canine unit and was informed several minutes later that

it was on the way. The canine handler closest to Giltner arranged for a babysitter, retrieved the drug detection canine and drove 19 miles to the scene.

In the meantime, Goltz continued to look for contraband as well as the key to the tonneau cover, which he thought might be concealed in a magnetic key holder. While searching the truck cab, he found an envelope containing handwritten directions from Interstate 35 in Minnesota to Phoenix, Arizona, by way of Albuquerque, New Mexico. When questioned about the directions, which were inconsistent with his earlier statements, Siwek explained that he had considered looking at some property in Arizona but instead extended his stay in Denver. Goltz asked Siwek what the mileage of the truck was when he purchased it, but Siwek did not know. Goltz smelled at the area around the seal of the tonneau cover and bed frame and released some air from the tires but smelled nothing suspicious. These actions were visible to Siwek from his vantage point in the patrol car. A sheriff's deputy and a state police lieutenant arrived on the scene, and at 1:32 p.m. Goltz learned from dispatch that the truck was properly licensed in Minnesota but that no mileage information was on file.

Around 1:44 p.m., Goltz slid underneath the truck bed. Without moving any parts on the truck, Goltz was able to see drain holes located behind the driver's seat. Goltz later testified at the suppression hearing that from his experience in searching vehicles over a 17-year period, he thought that by probing a drain hole he might be able to tell if anything was located above the opening. Goltz inserted a wire probe through the drain hole in the frame and through the corresponding drain hole in the bed that was aligned with and located approximately four inches above the hole in the frame. The probe touched something that to Goltz seemed heavy. Using a flashlight to see inside the drain hole, Goltz viewed what appeared to be green plastic wrap. Goltz testified that he knew from experience that bundles of marijuana often are wrapped in clear or green plastic wrap. Goltz inserted the probe again to move the object. However, the wire probe punctured the plastic wrap and entered the package.

When Goltz withdrew the probe, a green substance was stuck on the end of the probe. Goltz and the lieutenant identified the odor of the substance on the probe as that of marijuana, and the substance was confirmed to be marijuana a few minutes later in a field test.

Siwek immediately was arrested and handcuffed. The canine handler arrived with the drug detection canine at approximately 2:00 p.m. The drug detection canine alerted to the rear wheel area on the passenger's side and to the front of the truck bed on the driver's side. The truck was impounded, and a subsequent search of the truck bed yielded 204 pounds of marijuana and $7,500 cash.

Following an evidentiary hearing, the magistrate judge issued a report and recommendation that Siwek's motion to suppress be denied. Siwek filed objections, and the district court adopted the report and recommendation and denied the motion to suppress physical evidence. The district court held that Siwek voluntarily consented to the search of the entire truck and that Goltz did not exceed the scope of that consent when he accessed the truck bed under the tonneau cover through a drain hole, nor did he spend too much time searching the truck. In the alternative, the district court found that the evidence was admissible because the marijuana would have been inevitably discovered by the drug detection canine, resulting in probable cause to search under the tonneau cover pursuant to the automobile exception to the warrant requirement. As another alternative basis for admission of the evidence, the district court concluded that Goltz had reasonable suspicion to detain Siwek until the drug detection canine arrived and that the detention was for a reasonable period of time.

Siwek entered a conditional plea of guilty to one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1) and to one count of criminal forfeiture of $7,500 and the 2001 Chevrolet pickup truck under 21

U.S.C. § 853, preserving the right to appeal the denial of his motion to suppress. The district court sentenced Siwek to 33 months' imprisonment. Siwek appeals the denial of his motion to suppress physical evidence.

## II.    DISCUSSION

When reviewing a district court's denial of a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Stevens*, 439 F.3d 983, 987 (8th Cir. 2006). We also review for clear error the district court's determination of the voluntariness of a consent to search. *United States v. Mancias*, 350 F.3d 800, 804 (8th Cir. 2003).

Siwek argues that his Fourth Amendment rights were violated because he did not voluntarily consent to the search of his truck; even if he did consent, the search went beyond the scope of the consent, and he withdrew his consent; evidence in the truck bed would not have been inevitably discovered; and Goltz did not have reasonable suspicion to justify detaining Siwek or probable cause to search the truck bed. We find that Siwek voluntarily consented to a search of the truck, that the search conducted was within the physical and temporal scope of that consent, and that the consent was not withdrawn. Because we may affirm the judgment of the district court on any basis supported by the record, we need not address other exceptions to the Fourth Amendment's warrant requirement. *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003).

First, Siwek contends that he did not voluntarily consent because when Goltz asked for consent to search, Goltz had yet to complete his investigation of and return Siwek's driver's license; Goltz did not tell Siwek that he was free to leave; and Goltz did not offer him a written consent-to-search form. A warrantless search of a vehicle

does not violate the Fourth Amendment if the law enforcement officer first obtains voluntary consent to search. *United States v. White*, 42 F.3d 457, 459 (8th Cir. 1994). "Consent to search is voluntary if it is the product of an essentially free and unconstrained choice by its maker . . . rather than the product of duress or coercion, express or implied." *Mancias*, 350 F.3d at 804 (quotations and citations omitted). Voluntariness is a factual question determined by the totality of the circumstances. *Id.* at 805.

Siwek's consent to search is not rendered involuntary for any of the reasons he offers. The encounter between Siwek and Goltz was initiated by Siwek when he exited his truck and approached Goltz to inquire about a restaurant. After asking about Siwek's trip and Siwek's truck and its contents, Goltz requested permission to conduct a search of the truck. Siwek's resulting consent was not the product of coercion merely because Goltz had not finished his investigation of the driver's license or returned the license to Siwek. *See United States v. Fuller*, 374 F.3d 617, 622 (8th Cir. 2004) (concluding that the district court did not clearly err in finding voluntary consent to search where the officer requesting consent was holding the individual's driver's license at the time and three armed police officers were present). Moreover, Goltz's failure to inform Siwek that he was free to leave or to provide him with a consent-to-search form did not render Siwek's consent involuntary. *See Ohio v. Robinette*, 519 U.S. 33, 40 (1996) (holding that a police officer is not required "to always inform detainees that they are free to go before a consent to search may be deemed voluntary"); *United States v. Carrate*, 122 F.3d 666, 670 (8th Cir. 1997) (holding that a written consent-to-search form is not necessary to establish voluntariness of consent to search). Examining the totality of the circumstances, the district court noted that Siwek voluntarily stopped his truck to speak with Goltz; gave his consent to search less than four minutes after approaching Goltz; easily communicated with Goltz; did not object or withdraw his consent to the search at any time; and encountered Goltz on a public street in daylight. We find that the district court did not clearly err in holding that Siwek's consent to the search of his truck was voluntary.

Second, Siwek claims that even if he did voluntarily consent, his consent did not extend to a search of the truck bed under the locked tonneau cover. The boundaries of a consensual automobile search are confined to the scope of the consent. *United States v. Martel-Martines*, 988 F.2d 855, 858 (8th Cir. 1993); *see also Walter v. United States*, 447 U.S. 649, 656 (1980) ("When an official search is properly authorized—whether by consent or by the issuance of a valid warrant—the scope of the search is limited by the terms of its authorization."). We measure the scope of consent to search by a standard of objective reasonableness. *United States v. Urbina*, 431 F.3d 305, 310 (8th Cir. 2005). The issue is what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). We find that the district court did not err in concluding that the search remained within the boundaries of Siwek's consent, both with respect to the physical scope of the search and its duration.

When Siwek voluntarily gave a general statement of consent to search his truck, he authorized a search for the items about which Goltz had questioned him—weapons, stolen property and illegal drugs. It was objectively reasonable for Goltz to search any part of the truck where these items might be stored. *See United States v. Alcantar*, 271 F.3d 731, 738 (8th Cir. 2001) ("[W]hen an officer receives consent to search for an item that can be easily hidden, the officer may conduct a sufficiently thorough search to find those items."). For purposes of the Fourth Amendment, there is no meaningful distinction between probing a drain hole and searching inside of a closed but unlocked container within a vehicle. *See Jimeno*, 500 U.S. at 252 (holding that if a defendant's consent to search a vehicle "would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization" to open the container).

Although in his brief Siwek alluded to the unreasonableness of destroying the contents of a vehicle during a consent search, *see United States v. Alverez*, 235 F.3d 1086, 1089 (8th Cir. 2000), Siwek's counsel acknowledged at oral argument that

Goltz did not destroy anything while conducting the search. Indeed, any damage to the contents of the truck bed caused by the perforation of the plastic wrap is de minimis in nature and does not place the search beyond the bounds of Siwek's consent. *See Martel-Martines*, 988 F.2d at 858 n.3 (noting in a challenge to the scope of a consent search that, although the means of access was not challenged, the small hole punctured in a concealed compartment was reasonable where the defendant gave general consent to search the truck and passively observed the officers conduct the search); *United States v. Marquez*, 337 F.3d 1203, 1208-09 (10th Cir. 2003) (finding that an officer did not exceed the scope of consent to search a recreational vehicle when he removed plywood nailed to a bench to access the storage compartment underneath because any resulting damage was de minimis); *United States v. Battista*, 876 F.2d 201, 203, 207-08 (D.C. Cir. 1989) (upholding the penetration of a plastic bag with the nail-file component of a pocketknife during a consensual search for drugs). Therefore, we conclude that Goltz was acting within the scope of the consensual search when he inserted a wire probe into the open drain hole and punctured the plastic wrap with the probe.

We also agree with the district court that the length of the search did not exceed the scope of consent. Approximately 45 minutes passed from the time that Goltz requested and obtained Siwek's consent to search until Goltz discovered the marijuana through the drain hole. During this time, Siwek made no effort to withdraw or limit the scope of his consent and did not protest in any manner the continuation of the search. Therefore, it was objectively reasonable for Goltz to continue searching and access the contents of the truck bed by means of the drain hole. *See United States v. Meza-Gonzalez*, 394 F.3d 587, 592 (8th Cir. 2005) (holding that a consensual search was objectively reasonable where the individual could see much of the progress of the search and never objected to the search); *Alcantar*, 271 F.3d at 738 (holding that an hour-long search did not exceed the scope of a consensual search for drugs and weapons in a truck where neither of the defendants objected to the continuation of the search); *United States v. Gleason*, 25 F.3d 605, 607 (8th Cir. 1994) (explaining that

the defendant's failure to object to the continuing search of the truck made the search of any place in which a gun could be hidden objectively reasonable).

Next, Siwek argues that he effectively withdrew any consent to search the truck bed when he informed Goltz that he lacked the key to the tonneau cover. We do not agree that this statement amounts to a withdrawal of consent to search, which can only be accomplished by an unequivocal act or statement. *See United States v. Sanders*, 424 F.3d 768, 774 (8th Cir. 2005); *United States v. Gray*, 369 F.3d 1024, 1026 (8th Cir. 2004) (finding that the defendant's expression of impatience with the length of an automobile search, unaccompanied by a specific request to leave, did not constitute a withdrawal of consent to search). During the encounter, Siwek conversed with Goltz frequently, could see Goltz performing the search and never objected to Goltz searching any part of the truck. Siwek contends that the district court erred in relying on *United States v. Barragan*, 379 F.3d 524 (8th Cir. 2004), to support the conclusion that Siwek's failure to provide the tonneau cover key could not be construed as a withdrawal of consent to search. We find no error in the district court's comparison of the cases. In *Barragan*, the driver and owner of a vehicle consented to a search of the vehicle. *Id.* at 530. When the officer asked the driver and other occupants how to open a false compartment, they stated that they were unaware of the compartment and did not know how to open it. *Id.* The Court found that these responses "merely maintained the *status quo*" and that it was objectively reasonable for the officer to search the compartment, which was an integral part of the vehicle. *Id.* Similarly, a reasonable person would not have understood Siwek's assertion that the tonneau cover key had not been mailed to him by the seller of the truck as a revocation of his prior consent to search the entire truck.

Finally, Siwek asserts that the fact that he "was never told that his plate came back 'on file', eviscerates any 'consent by conduct' of [Siwek]." We decline Siwek's apparent invitation to speculate that an update from Goltz on the status of the license plate would have caused Siwek to withdraw his consent to search. Goltz did not learn

that the license plate was properly assigned to Siwek's truck until 34 minutes after Siwek voluntarily consented to a search of his truck and well after the search had commenced. Moreover, this is not a case where "a consent has been rendered involuntary under the law because of deception on the part of a law enforcement officer." *United States v. Bryson*, 110 F.3d 575, 582 (8th Cir. 1997). Siwek does not claim that Goltz made any misrepresentation at the time Siwek consented to the search.

Because Siwek's consent to search was voluntary, was not withdrawn, and reasonably extended to a search of the truck bed by means of inserting a wire probe into the drain hole, we conclude that the motion to suppress evidence properly was denied. In light of this conclusion, we need not address Siwek's remaining arguments challenging the district court's alternative holdings that the evidence would have been inevitably discovered through the use of the drug detection canine and that Goltz had reasonable suspicion to detain Siwek and detained him for a reasonable amount of time until the arrival of the drug detection canine.

## III.   CONCLUSION

The district court did not err in denying Siwek's motion to suppress physical evidence. Accordingly, we affirm the judgment of the district court.

_____