# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-2481

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeals from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| Javier Torres Guzman, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

No. 11-2534

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Efren Diaz Jasso, | * |
| | * |
| Appellant. | * |

_____

Submitted: February 13, 2012
Filed: February 21, 2012

_____

Before LOKEN, BOWMAN, and BYE, Circuit Judges.

_____

PER CURIAM.

In September 2009, Javier Torres Guzman (Torres) and Efren Diaz Jasso (Diaz) were driving across Arkansas when Arkansas State Trooper Mike McNeill stopped their vehicle, which was being driven by Torres, because Torres was not wearing his seat belt, a violation of Arkansas law. McNeill explained the reason for the traffic stop, and Torres responded in English that he had been wearing his seat belt but had just taken it off for the traffic stop. Thereafter, the two men engaged in a series of questions and answers, with Torres's responses occasionally suggesting that his limited English-language skills caused him some difficulty in understanding McNeill's questions. McNeill repeatedly asked Torres if he could search Torres's vehicle and, after some confusing exchanges, McNeill searched the vehicle, recovering 2.7 pounds of methamphetamine.

Torres and Diaz were indicted for conspiring to possess, and possessing, methamphetamine with the intent to distribute. 18 U.S.C. §§ 841(a)(1), (b)(1)(a) & 846. Torres filed a motion to suppress the methamphetamine recovered from his vehicle, arguing that he did not knowingly and voluntarily consent to the search. Diaz joined in the suppression motion. In denying the motion, the District Court[1] found that the government had proved by a preponderance that it was reasonable for McNeill to believe that Torres knowingly and voluntarily consented to the search. After a bench trial, Torres and Diaz were each found guilty of the crimes charged, and each was sentenced to 151 months' imprisonment.

1. *Torres*

On appeal, Torres argues that his limited understanding of English prevented him from validly consenting to the search of his vehicle and that the District Court erred in concluding otherwise. A search conducted without a warrant is valid if the

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

person subject to the search knowingly and voluntarily consents thereto.  United States v. Cedano-Medina, 366 F.3d 682, 684 (8th Cir.), cert. denied, 543 U.S. 1035 (2004).  "The focus is not whether [the defendant] subjectively consented, but rather, whether a reasonable officer would believe consent was given . . . ."  United States v. Guerrero, 374 F.3d 584, 588 (8th Cir. 2004).  Consent "can be inferred from words, gestures, or other conduct."  Id.  Whether a reasonable officer would believe that a defendant consented  is a question of fact that we review for clear error.  United States v. Pena-Ponce, 588 F.3d 579, 584 (8th Cir. 2009).

Here, McNeill testified at the suppression hearing that after he stopped Torres for the seat-belt infraction, Torres explained in English that he had been wearing his seat belt until he was pulled over.  McNeill asked for Torres's driver's license and proof of insurance, and Torres responded by providing an expired Arkansas identification card and proof of insurance.  McNeill asked Torres to step out of the vehicle and move to the passenger side of the patrol car, and Torres complied.  The government introduced a video recording of the traffic stop but because of a technical malfunction in the patrol-car equipment, the recording does not begin until after Torres explained in English that he had been wearing his seat belt until he was pulled over.  The video revealed that when McNeill asked whether Torres had any drugs or weapons, Torres responded, "No," and when McNeill asked Torres how long he had been in the United States, Torres responded, "Five."  But when McNeill asked Torres his age, Torres responded with his full name.  When McNeill asked whether Torres would permit a search of his vehicle, Torres initially responded by stating that the car was not his; it belonged to his cousin.  McNeill asked several more times whether he could search the vehicle, explaining that Torres could consent to a search even if he did not own the vehicle because he had been driving it.  Eventually, Torres agreed to the search, stating, "Sure."  The government also called James White, who testified that he and Torres had worked together for three years as seasonal employees; that he spoke with Torres at work in English; and that on a scale of one to ten, Torres's English-language skills were "somewhere in the middle."  Suppression Hr'g Tr. at 8.

Based on this evidence, the District Court did not clearly err in concluding that "a reasonable person would believe Torres voluntarily consented to the search when he answered 'sure' to McNeill's request to search the car." Order of Oct. 22, 2010, at 4. As in Cedona-Medina, 366 F.3d at 686, there was a "language barrier" and "apparent lapses in communication" between McNeill and Torres, but Torres responded appropriately to most of the questions posed and requests made by McNeill, Torres did not object to the search once it had begun, and the government established by a preponderance of the evidence that McNeill reasonably believed that Torres spoke and understood English, a finding bolstered by White's testimony that he and Torres frequently conversed in English. See e.g., United States v. Gallardo, 495 F.3d 982, 989 (8th Cir. 2007) (upholding district court's determination that consent was voluntary where language barrier existed); United States v. Sanchez, 156 F.3d 875, 878 (8th Cir. 1998) (same); United States v. Galvan-Muro, 141 F.3d 904, 907 (8th Cir. 1998) (same).

2. *Diaz*

Diaz first argues that the District Court erred in ruling that because he was merely a passenger in Torres's vehicle, he did not have standing to challenge the search of the vehicle. He also argues that the court erred in ruling that Torres knowingly and voluntarily consented to the search. To have standing to assert his claim, Diaz must demonstrate that he personally had a reasonable expectation of privacy in the vehicle; such an expectation cannot be asserted vicariously. See United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004). As a mere passenger in Torres's vehicle with no legitimate expectation of privacy, Diaz does not have standing to challenge the search of Torres's car. See id. at 530. Diaz cites the U.S. Supreme Court's holding in Brendlin v. California, 551 U.S. 249 (2007), for the proposition that he has standing to challenge the search even though he was only a passenger in Torres's vehicle. Brendlin held that a passenger is seized during a traffic stop and thus may challenge the stop itself. Id. at 255. But Diaz is attempting to

-4-

challenge the search of Torres's vehicle, not the traffic stop, and <u>Brendlin</u> provides no support for Diaz's argument. <u>See</u> <u>United States v. Crippen</u> 627 F.3d 1056, 1063 (8th Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 2914 (2011). The District Court did not err in concluding that Diaz does not have standing to assert a challenge to the search of Torres's vehicle.

Diaz next argues that the District Court erred in ruling that the initial traffic stop was valid because, according to Diaz, McNeill did not have reasonable suspicion to stop Torres's vehicle. We disagree. It is well established that even a minor traffic violation provides probable cause for a traffic stop. <u>Barragan</u>, 379 F.3d at 528. Even when an officer has a subjective belief that other illegal activity is afoot, the officer's subjective beliefs do not invalidate the traffic stop. <u>United States v. Long</u>, 320 F.3d 795, 798 (8th Cir. 2003) (concluding that a traffic stop is constitutional regardless of an officer's motive as long as the officer had probable cause to believe a traffic violation had occurred). Here, McNeill testified that as he was passing Torres's vehicle on the driver's side, he looked into the vehicle and it appeared as if Torres was not wearing his seatbelt. To confirm, McNeill pulled ahead of Torres and into the same lane, confirming through use of his rear-view mirror that Torres was not wearing his seat belt. Although Torres and Diaz testified that Torres was wearing his seat belt, the District Court credited McNeill's testimony, and that determination "is entitled to considerable weight." <u>Cedano-Medina</u>, 366 F.3d at 686.

Diaz also argues that even if the initial stop was valid, the lawful scope of the stop was impermissibly exceeded and he was illegally detained. A valid traffic stop can become unlawful if it is "prolonged beyond the time reasonably required" to complete the purpose of the stop. <u>Illinois v. Caballes</u>, 543 U.S. 405, 407 (2005). Here, once Torres consented to a search of his vehicle, he necessarily consented to the extension of the traffic stop for the length of time required for McNeill to execute the search. The traffic stop was not impermissibly extended and Diaz was not illegally detained while McNeill carried out the search to which Torres consented.

-5-

For the foregoing reasons, we affirm the judgment of the District Court.

_____