# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3056

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Eduardo Pelayo-Ruelas, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  May 12, 2003

Filed:  October 7, 2003

_____

Before LOKEN, Chief Judge, BRIGHT and MURPHY, Circuit Judges.

_____

LOKEN, Chief Judge.

A jury convicted Eduardo Pelayo-Ruelas of possession with intent to distribute and conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846.  Pelayo appeals the district court's[1] denial of his motion to suppress statements made after Pelayo identified himself as an illegal alien and a Drug Enforcement Administration (DEA) agent asked him to exit his vehicle and conducted a pat down search.  Pelayo argues he was in custody when he exited the

_____

[1]The HONORABLE JAMES M. ROSENBAUM, Chief Judge of the United States District Court for the District of Minnesota.

vehicle and therefore further questioning without <u>Miranda</u> warnings violated his Fifth and Sixth Amendment rights. Neither party appeals the 120-month sentence imposed by the district court. We conclude that the questioning was part of a valid <u>Terry</u> stop and that Pelayo was not in custody, for <u>Miranda</u> purposes, when he made the statements. Therefore, we affirm.

A reliable informant advised DEA Special Agent Adam Castilleja that a tan Toyota Camry with Minnesota license plates and occupied by two Hispanic males would arrive from the State of Washington between 6:00 and 9:00 a.m. the next morning. The informant further stated the vehicle would have multiple pounds of methamphetamine hidden inside, one of the occupants would be named "Eduardo," and the car would be traveling to a Super 8 Motel in the Minneapolis area to meet another vehicle before delivering the drugs to a storage facility in St. Paul.

The next morning, DEA agents alerted Agent Castilleja that a tan Camry with Minnesota plates had arrived at the Super 8 Motel in suburban Crystal at 8:45 a.m., and two Hispanic occupants had entered the motel. While traveling to the Super 8, Agent Castilleja learned that the vehicle was registered to a false address. At 10:15 a.m., a Hispanic male left the motel in the Camry, followed by Agent Castilleja. The Camry proceeded down a service road to a dead end and stopped. Agent Castilleja parked his unmarked vehicle near the Camry, and another unmarked police car pulled up and parked behind Agent Castilleja's vehicle. The police cars did not block the Camry's exit path. The agent in the second vehicle remained by his car while Agent Castilleja, dressed in plain clothes, approached the Camry and identified himself as a DEA agent. The ensuing conversation was in Spanish.

The driver produced a Washington State card identifying him as Eduardo Pelayo-Ruelas. Agent Castilleja asked why Pelayo had a Washington driver's license but was driving a vehicle with Minnesota license plates. Pelayo responded that he was in the country illegally and currently lived in Washington. Agent Castilleja

asked Pelayo to step out of the vehicle, conducted a brief pat down search for weapons, and continued the conversation regarding Pelayo's presence in Minnesota. Pelayo explained that he had driven from Washington at the request of a friend who accompanied him on the trip. Pelayo said he was on his way to his uncle's house but could not produce the uncle's address or telephone number. During the conversation, Agent Castilleja observed tools in the back seat of the Camry that, in the agent's experience, are often used to extract drugs from hidden compartments in vehicles.

Agent Castilleja then asked Pelayo for written consent to search the vehicle. He explained the consent form and told Pelayo that consent was voluntary and could be retracted at any time. Pelayo consented and signed the form. At approximately 10:45 a.m., the agent called for a drug detection dog. When the dog alerted to the rear bumper, Agent Castilleja placed Pelayo under arrest and advised him of his <u>Miranda</u> rights in Spanish. Pelayo declined to talk further without an attorney.

Before trial, adopting the recommendation of the magistrate judge, the district court suppressed statements that Pelayo made from the time he was removed from the vehicle until his arrest on the ground that Pelayo was then in custody and had not been advised of his <u>Miranda</u> rights. However, after hearing Agent Castilleja's testimony at trial, the district court reversed its decision and allowed the statements into evidence. On appeal, Pelayo argues the district court erred in denying his motion to suppress because he was in custody once Agent Castilleja removed him from the vehicle and conducted a pat down search. His <u>Miranda</u> rights were triggered at that point, Pelayo argues in his brief, because a reasonable person in those circumstances would not have felt free to leave.

In <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966), the Supreme Court held that a law enforcement officer, prior to conducting custodial interrogation, must advise the suspect of his right to be free from compulsory self-incrimination and to the assistance of counsel. Following <u>Miranda</u>, the Supreme Court held in <u>Terry v. Ohio</u>,

392 U.S. 1 (1968), that a police officer with reasonable suspicion that criminal activity is afoot may briefly detain a suspect to investigate the circumstances giving rise to that suspicion.

In Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984), a traffic stop case, the Court discussed the interaction between the custodial interrogation principle of Miranda and the brief-detention-to-investigate principle of Terry:

> The [Terry] stop and inquiry must be reasonably related in scope to the justification for their initiation. Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purpose of Miranda.

(Quotation and citation omitted.) Citing Berkemer, we have declared that,"No Miranda warning is necessary for persons detained for a *Terry* stop." United States v. McGauley, 786 F.2d 888, 890 (8th Cir. 1986), followed in United States v. Johnson, 64 F.3d 1120, 1125-26 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996). Thus, we reject as contrary to this controlling authority Pelayo's broad contention that a person is in custody for Miranda purposes whenever a reasonable person would not feel free to leave. One is not free to leave a Terry stop until the completion of a reasonably brief investigation, which may include limited questioning. But most Terry stops do not trigger the detainee's Miranda rights.

At oral argument, conceding that not all <u>Terry</u> seizures trigger the right to <u>Miranda</u> warnings, counsel for Pelayo argued more narrowly that a reasonable person in Pelayo's circumstances would have believed he was "in custody" after admitting his illegal alien status to a federal officer. Again, the Supreme Court's discussion in <u>Berkemer</u> is instructive on this narrower issue:

> It is settled that the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest. If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him "in custody" for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda. . . . Turning to the case before us, we find nothing in the record that indicates that respondent should have been given Miranda warnings at any point prior to the time Trooper Williams placed him under arrest. . . . [R]espondent has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest. Only a short period of time elapsed between the stop and the arrest. At no point during that interval was respondent informed that his detention would not be temporary. . . . From aught that appears in the stipulation of facts, a single police officer asked respondent a modest number of questions . . . at a location visible to passing motorists. Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest.

468 U.S. at 440-442 (quotation and citations omitted).

Though this case raises the issue in the context of a drug investigation, not a traffic stop, the relevant facts make it indistinguishable from <u>Berkemer</u>. The information furnished by the confidential informant suggested a possible threat to officer safety, but only one agent approached and questioned Pelayo in plain clothes and without drawing his weapon, an atmosphere like the typical traffic stop. <u>Compare</u> <u>Johnson</u>, 64 F.3d at 1126. Agent Castilleja no doubt had probable cause to

arrest Pelayo when he admitted being an illegal alien. Instead, Agent Castilleja continued to conduct a reasonably limited investigation to confirm or dispel his suspicion of illegal drug trafficking. Pelayo exited the vehicle, consented to its search, and voluntarily continued the conversation regarding his trip to Minnesota. After conducting the pat down search -- a rather routine component of a <u>Terry</u> stop -- Agent Castilleja did not restrain Pelayo's movement to the degree associated with an arrest. <u>See</u> <u>United States v. Hernandez-Hernandez</u>, 327 F.3d 703, 706 (8th Cir. 2003). Pelayo was not arrested until the consensual search of his vehicle produced probable cause to believe he was engaged in illegal drug trafficking. Until that arrest, Agent Castilleja's conduct of the <u>Terry</u> stop did not curtail Pelayo's freedom to the degree associated with a formal arrest. <u>Compare</u> <u>United States v. Rodriguez-Arreola</u>, 270 F.3d 611, 617 (8th Cir. 2001). Accordingly, the district court properly denied the motion to suppress.

The judgment of the district court is affirmed.

_____