# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2058
_____

United States of America,

*Plaintiff - Appellee,*

v.

James Lawrence Salkil,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: April 12, 2021
Filed: August 25, 2021

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

James Lawrence Salkil appeals his convictions for unlawful possession of a firearm and possession of methamphetamine. Salkil challenges an order of the

district court[1] denying his motion to suppress evidence obtained during a traffic stop, and he also appeals the sentence imposed. We conclude that there was no error, and affirm the judgment.

The case started with a traffic stop in Bettendorf, Iowa. Sergeant Joshua Paul, an officer with the Bettendorf Police Department, stopped Salkil's car because the rear license plate was not illuminated by light bulbs as required by Iowa law. *See* Iowa Code § 321.388. Sergeant Paul ran Salkil's name through a law enforcement database and learned that he had "recent involvement" with one Jamie Fulton "in which guns and drugs were located on a search warrant."

Another officer arrived on the scene, and Sergeant Paul decided to issue a warning to Salkil. For about thirty-seven seconds, Paul asked Salkil about his connection to Fulton and related matters. Paul then requested consent to search Salkil's vehicle, and Salkil immediately granted consent. The consent occurred about ten minutes and forty-five seconds after his first contact with Paul. The second officer began to write the warning ticket while Paul searched Salkil's vehicle.

Paul searched Salkil's vehicle and discovered a scale with white residue in the center console. Paul also found a handgun in Salkil's waistband, and methamphetamine and a pipe in his pocket. At that point, while the second officer was still writing the warning ticket, officers placed Salkil under arrest. The ticket-writing process had consumed between three and four minutes before it was interrupted by the arrest.

A grand jury charged Salkil with unlawfully possessing a firearm as a previously convicted felon and possessing methamphetamine. *See* 18 U.S.C.

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

§ 922(g)(1); 21 U.S.C. § 844(a).  Salkil moved to suppress the gun and drugs on the ground that the officers unlawfully prolonged the traffic stop.  The district court denied that motion, and Salkil entered a conditional guilty plea that reserved his right to appeal the lawfulness of the seizure.

At sentencing, the district court applied a four-level increase for possessing a firearm in connection with another felony offense—in this case, the Iowa offense of "carrying weapons."  *See* USSG § 2K2.1(b)(6)(B); Iowa Code § 724.4(1) (2020).  That adjustment brought the total offense level to 27.  The court, however, varied downward from the guidelines and sentenced Salkil without the effect of the § 2K2.1(b) increase, because he was not "doing something at the time that made the presence of a firearm of more concern."

Salkil first appeals the denial of his motion to suppress.  A traffic stop is a seizure within meaning of the Fourth Amendment, and authority for the stop "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  During a stop, officers may complete "routine tasks," such as "computerized checks of . . . the driver's license and criminal history, and the writing up of a . . . warning." *United States v. Englehart*, 811 F.3d 1034, 1040 (8th Cir. 2016) (internal quotation omitted).  Officers also "may conduct certain unrelated checks," but not "in a way that prolongs the stop."  *Rodriguez*, 575 U.S. at 355.  The Fourth Amendment does not prevent officers "from asking questions unrelated to the traffic stop" or "seeking consent to search" a vehicle.  *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001).

Salkil argues that Sergeant Paul extended the stop by delaying the issuance of the warning "for a period longer in time (12 minutes) than his average stop takes in its entirety."  Paul testified that traffic stops generally take about twelve minutes from the beginning of the stop until the vehicle is released. The district court found, however, that Salkil consented to the search of his vehicle some ten minutes and

forty-five seconds after his first interaction with Sergeant Paul. The court thus concluded that Salkil consented within the average time for a "routine traffic stop." The record supports that conclusion.

Salkil contends that the officers delayed the stop unnecessarily by questioning him about his association with Jamie Fulton. While it is possible that investigation of matters unrelated to the mission of the traffic stop could result in an unreasonable seizure if they prolong the detention, *see United States v. Peralez*, 526 F.3d 1115, 1120-21 (8th Cir. 2008), that is not the case here. Even if the second officer had begun to write the warning ticket while Paul questioned Salkil for thirty-seven seconds about extraneous matters, the ticket-writing process consumed more than three minutes, so Salkil gave consent to search well before the warning ticket would have been completed. In other words, police obtained consent to search within the time reasonably required to complete the mission of the traffic stop. Once police lawfully secured consent to search, any delay occasioned by the search did not constitute an unlawful extension of the seizure. *See United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018).

Salkil also suggests that Sergeant Paul's decision to have his colleague write the warning by hand improperly extended the stop, because he chose a slower method than generating the warning by computer. We are not convinced that the constitutional requirement of reasonableness mandates that police use only computer-generated warning tickets. There is no showing in any event that using a computer would have produced the warning within thirty-seven seconds before Salkil consented to the search. Once Salkil gave consent to search, it did not matter what method was used to generate the warning ticket, because Salkil necessarily consented to an extension of the traffic stop while the search was conducted. *United States v.*

-4-

*Rivera*, 570 F.3d 1009, 1013-14 (8th Cir. 2009). We therefore conclude that the district court properly denied Salkil's motion to suppress.[2]

As to his sentence, Salkil maintains that the increase under USSG § 2K2.1(b)(6) amounts to impermissible double counting and creates "overly harsh and absurd results." This argument is foreclosed by circuit precedent. *United States v. Roberts*, 958 F.3d 675, 677 (8th Cir. 2020); *United States v. Walker*, 771 F.3d 449, 452-53 (8th Cir. 2014). In any event, the district court in this case varied downward to offset the entire four-level increase, so Salkil has no basis to complain. Salkil also argues that his sentence is substantively unreasonable, but it is "nearly inconceivable" that a sentence below the advisory range would be unreasonably high, *United States v. Lazarski*, 560 F.3d 731, 733 (8th Cir. 2009), and the district court did not abuse its discretion here.

The judgment of the district court is affirmed.

_____

[2]For the first time on appeal, Salkil argues that Sergeant Paul effected an unlawful seizure because he arrested Salkil outside Bettendorf city limits for allegedly violating a city ordinance on drug paraphernalia. Salkil has not established good cause for failing to move to suppress on this ground in the district court, so we need not address it. *See* Fed. R. Crim. P. 12(c)(3); *United States v. Anderson*, 783 F.3d 727, 741 (8th Cir. 2015). In any event, whether an officer complies with the Fourth Amendment does not depend on his subjective motive for the arrest, and the officers had probable cause based on drugs in the vehicle to arrest Salkil for more than simply a violation of the city ordinance.