# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1197

_____

United States of America

*Plaintiff - Appellee*

v.

Manuel Romero Flores

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: September 23, 2022
Filed: December 12, 2022

_____

Before LOKEN, BENTON, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

After the district court[1] denied his motion to suppress, Manuel Romero Flores conditionally pleaded guilty to possession with intent to distribute a controlled substance. See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). The court sentenced Flores to

---

[1]The Honorable Stephanie M. Rose, Chief Judge of the United States District Court for the Southern District of Iowa.

126 months' imprisonment, varying upward six months from the mandatory minimum of 120 months, his advisory guidelines range. Flores appeals the denial of his motion to suppress, raising three Fourth Amendment issues emanating from a postal inspector's warrantless seizure of an undeliverable Express Mail package sent to "Manuel Flores Rm 512" at a hotel in Des Moines, Iowa. He also appeals his sentence, arguing it is substantively unreasonable because the district court failed to adequately justify the upward variance. We affirm.

## I. Background

United States Postal Service ("USPS") Postal Inspector Ryan Brandt was the only witness at the hearing on Flores's motion to suppress. The district court found Brandt credible. Brandt testified that USPS in Des Moines received an Express Mail package addressed to "Manuel Flores Rm 512" at the Des Lux Hotel in Des Moines, Iowa. The letter carrier could not deliver the package on July 19, 2020, because Flores had been removed from the hotel several days earlier. Postal employees at the main post office in downtown Des Moines marked the package "RTS" (return to sender) and placed it in the Express Mail room. They also notified Inspector Brandt of the attempted delivery.

The next morning, Inspector Brandt went to the Express Mail room to inspect the package. The handwritten Express Mail label showed that it was sent from a "Manuel Luis Flores" in Oxnard, California to a "Manuel Flores" in Room 512 at the Des Lux Hotel in Des Moines. The sender included a phone number with a local California area code and a return address. The return address was a real address in Oxnard. Inspector Brandt testified that, based on his training and experience, the label suggested the package might contain controlled substances -- it was sent from California, a "source state;" it was an Express Mail package; it was sent to a hotel; it was from an individual to an individual; the label was handwritten; and the names of the sender and recipient were very similar.

Inspector Brandt further testified that it is USPS policy to hold undeliverable packages at the destination post office for "a period of days" to provide the recipient time to claim the package. If not claimed, the package is then returned to the sender. In this instance, while still in the Express Mail room, Inspector Brandt called the sender's listed California phone number. When a man answered, Brandt identified himself as a federal agent and asked if he was speaking to "Manuel Flores." The speaker said yes, confirmed he had sent an Express Mail package to Des Moines, requested that USPS return the package, and granted Inspector Brandt consent to search the package but said he did not know what was in it. When Brandt asked why the speaker did not know the contents of a package that he mailed, the speaker hung up. Believing that the speaker was the sender and had consented to search of the package, Inspector Brandt moved the package from the Express Mail room to his office, opened the package, and discovered 83.7 grams of methamphetamine.

The next day, Flores visited the post office multiple times to inquire about the package. Inspector Brandt reassembled the package (minus the methamphetamine) and arrested Flores after a controlled delivery on July 22. In a police station interview, officers learned that Flores was now staying at a La Quinta Inn in Clive, Iowa. They also located his cell phone at a Comfort Inn & Suites near the Des Moines post office and retrieved the phone from Comfort Inn staff. A warrant search of the phone uncovered "general discussion about narcotics" and specific information about the package, including text messages arranging for its shipment.

In the district court, Flores filed two separate motions to suppress, raising numerous issues. We limit our discussion to the issues Flores raises on appeal. The district court held that Inspector Brandt had reasonable suspicion to seize the package when he called the speaker; that postal delivery of the package had not been delayed prior to that call; that the speaker granted Inspector Brandt valid consent to search the package; and that any seizure of Flores's cell phone at the Comfort Inn before a warrant to search was obtained was not "fruit of a poisonous tree." In his subsequent

guilty plea, Flores preserved the right to appeal the district court's suppression rulings.

## II. Suppression Issues

**A. Seizure of the Package.** Flores argues on appeal, as he did in the district court, that Inspector Brandt violated the Fourth Amendment's protection against unreasonable seizure of sealed packages placed in the mail when Brandt "took the package from regular USPS employees on July 20, 2020, which removed it from the stream of shipping" *before* Brandt called the sender's phone number on the Express Mail label. We disagree. A Fourth Amendment seizure of property requires "some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). While a person retains a Fourth Amendment right of privacy when he places a sealed package in the mail, "there could be no expectation the package would not be handled or that its physical attributes would not or could not be observed." United States v. Terriques, 319 F.3d 1051, 1055 (8th Cir. 2003) (quotation omitted). Accordingly, it is well established that there is no seizure of mailed packages until a law enforcement officer "delay[s] or otherwise interfere[s] with the normal processing of the package." United States v. Vasquez, 213 F.3d 425, 426 (8th Cir. 2000) (citations omitted); see United States v. Va Lerie, 424 F.3d 694, 707 (8th Cir. 2005) (en banc) (seizure of checked luggage).

In this case, Inspector Brandt did not interfere with the normal handling of the package until after he called the phone number on the Express Mail label. Flores, the intended recipient, had rendered the package undeliverable when police removed him from the hotel for unrelated misconduct. At this point, *normal USPS policy* was to retain the package in the Express Mail room for a period of time so that it could be claimed by the absent recipient, and then to return the package to its sender if it is not claimed. When Inspector Brandt arrived at the Express Mail room on the morning

of July 20, the package had been there for less than 24 hours, and no one had come to claim or inquire about the package. Thus, Brandt did not seize the package when he entered the mail room, inspected the package's exterior, and called the sender number on the Express Mail label. No seizure occurred until *after* Brandt spoke by phone with a person who claimed to be the sender, and removed the package to his office where he opened it and inspected what it contained. The district court expressly found that "the package was not delayed in its delivery to [Flores] prior to a valid consent to search the package." That finding was not clearly erroneous. See Terriques, 319 F.3d at 1055 (standard of review).

**B. Consent to Search the Package.** Inspector Brandt reasonably seized the package after his phone call to the sender's number in California in which he was given consent to search. Therefore, his warrantless search of the package did not violate the Fourth Amendment if the speaker voluntarily consented to the search and Brandt reasonably believed the speaker had actual or apparent authority to give valid consent. See Illinois v. Rodriguez, 497 U.S. 177, 188-89 (1990); Va Lerie, 424 F.3d at 709. The district court credited Brandt's unchallenged testimony that the speaker voluntarily consented to Brandt searching the package and concluded the consent to search was valid.

Both the sender and the recipient of a mailed package have a Fourth Amendment interest in a search of the package's contents. See United States v. Sierra-Serrano, 11 F.4th 931, 933 (8th Cir. 2021) (quotation omitted), cert. denied, 142 S. Ct. 1219 (2022). Thus, consent sufficient to search a mailed package may come from the actual sender or recipient, or from an individual that officers reasonably believe to be the sender or recipient. See Rodriguez, 497 U.S. at 188. Here, the speaker had this apparent authority if "the facts available to [Brandt] at the moment" would "warrant a man of reasonable caution" to believe that the speaker was the package sender. United States v. Cross, 888 F.3d 985, 989 (8th Cir. 2018) (quotation omitted); see United States v. Clutter, 674 F.3d 980, 983 (8th Cir. 2012).

In response to inquiries from Inspector Brandt, who identified himself as a federal agent, the speaker confirmed that he was the "Manuel Flores" who mailed an Express Mail package to Des Moines. The speaker asked for the package to be returned to him, then granted Brandt consent to search the package but denied knowledge of its contents. When Brandt inquired further, the speaker abruptly hung up the phone. Flores argues on appeal that Inspector Brandt did not have valid consent to search because he failed to ascertain the speaker's "affirmative identity," and because the speaker's lack of knowledge about the package contents should have raised doubt that he was in fact the package's sender. We disagree.

Consistent with Brandt's testimony, the district court found it "unsurprising" that a speaker who mailed illegal materials would deny knowledge of the package's contents to a federal law enforcement agent after confirming that he was the sender. Brandt had no obligation to ascertain the speaker's "affirmative identity." This objective inquiry turns on "the facts available to the officer at the moment." United States v. Gonzalez, 609 F.3d 13, 18 (1st Cir. 2010) (quoting Rodriguez, 497 U.S. at 188). Flores cites cases addressing the knowledge needed to "introduce evidence of the identity" of a phone call participant at trial, but that is a much different issue. Like the district court, we conclude that the speaker gave valid consent because his remarks over the phone plus the information on the Express Mail label led Inspector Brandt to reasonably believe that the speaker was the package's sender.

**C. Seizure of Flores's Cell Phone.** Flores argues the officers unlawfully seized his cell phone when they determined the phone had been left at the Comfort Inn after Flores checked out, persuaded Comfort Inn staff to turn over the phone, and then "maintained control" of the phone for a brief period before obtaining a search warrant. The district court rejected this argument because the initial seizure of the package and consent to open it were lawful so "the tree in this case has not borne any poisonous fruit." We agree. In addition, Comfort Inn staff had a legitimate interest in surrendering the phone to an appropriate person, Flores was in custody, and the

-6-

officers had reasonable suspicion the phone contained evidence of criminal activity. "A temporary seizure . . . while the officers applied for a search warrant did not meaningfully interfere with [Flores's] possessory interests." Clutter, 674 F.3d at 984.

### III. The Sentencing Issue

The district court imposed a 126-month sentence, a six-month upward variance from Flores's mandatory minimum sentence. The court explained that, while "I generally give [downward] variances" because the drug guidelines are too long, an upward variance was appropriate because Flores had committed 61 security and disciplinary violations while detained at the Polk County Jail between his arrest in July 2020 and his sentencing hearing in January 2022, including narcotics violations, sexual or violent assaultive behavior, rioting, and encouraging others to riot, all while a short-staffed jail struggled to keep up with the global pandemic. "I think there has to be some additional measure of punishment imposed here to reflect that behavior."

On appeal, Flores argues the 126-month sentence is substantively unreasonable because the district court failed to adequately justify the six-month upward variance. "The district court has wide latitude to weigh the [18 U.S.C. § 3553(a)] factors and assign some factors greater weight than others." United States v. Thibeaux, 784 F.3d 1221, 1227 (8th Cir. 2015). Here, the district court carefully explained why it imposed a six month upward variance, stating that a mandatory minimum sentence would "ignore" Flores's "ridiculously problematic" and "offensive" behavior during his pre-sentence detention for this offense. The court did not abuse its discretion by varying upward to account for dozens of serious security and disciplinary violations.

The judgment of the district court is affirmed.

_____